1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BUCKLEYSANDLER LLP**
RICHARD E. GOTTLIEB (State Bar No. 289370)
FREDRICK S. LEVIN (State Bar No. 187603)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Phone: (310) 424-3984
Facsimile: (310) 424-3960
rgottlieb@Buckleysandler.com
flevin@Buckleysandler.com

Attorneys for Petitioner Desside Holdings Limited

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESSIDE HOLDINGS LIMITED,<br><br>                    Petitioner,<br><br>vs.<br><br>MEGAWINE, INC., VADIM L. TOMCHIN, NATALIA LUKINA, GRANDPOINT BANK, and CITY NATIONAL BANK,<br><br>                    Respondents. | Case No. 13-cv-8211-JAK-JCG<br><br>**RENEWED PETITION FOR AN ORDER UNDER 28 U.S.C. § 1782(a)** |

Desside Holdings Limited ("Desside" or "Petitioner") hereby submits this renewed petition for an *ex parte* order requiring Megawine, Inc. ("Megawine"), Vadim L. Tomchin ("Tomchin"), Natalia Lukina ("Lukina"), Grandpoint Bank (formerly First Commerce Bank), and City National Bank (collectively, the "Respondents") to produce documents and provide testimony for use in an International Tribunal pursuant to 28 U.S.C. § 1782(a).  In support of its petition, Desside states:

## PROCEDURAL HISTORY

1.      On November 5, 2013, Desside lodged with the Court a Petition for an Order Under 28 U.S.C. § 1782(a) and supporting documents. At the same time, it lodged an application to file the Petition (and its supporting papers) under seal.

2.      On November 25, 2013, this Court issued an Order denying Desside's Application to File Documents Under Seal.  It also denied the Petition for an Order Under 28 U.S.C. § 1782(a), without prejudice to "Desside's filing a petition that addresses the deficiencies identified" in the Order.  Order at 4.

3.      This Renewed Petition addresses the concerns raised in the Order and also provides additional information that has come to light since the filing on November 5 of the original Petition.  In particular, on November 18, 2013, a hearing was held in the underlying Russian cases at issue here (Case Numbers A56-48493/2013 and A56-48505/2013) (the "Russian Legal Proceedings") and the Arbitration Court of St. Petersburg and the Leningrad Region (the "Russian Tribunal") was informed of the existence of this proceeding.  As set out in the declaration dated November 19, 2013 of Natalia Pokazanova, Desside's Russian attorney, the Russian judge expressed interest in receiving the evidence sought in this proceeding and set **December 16, 2013** as the date for Desside to report back to the Russian Tribunal on an expected timeframe for receiving the evidence sought in this Petition.

4.      In support of its Renewed Petition, Desside relies on the Petition and:

(i) the Memorandum of Law in Support of Renewed Petition for an Order Under 28 U.S.C. § 1782(a) (discussing the application of the *Intel* factors to the facts pled in the Petition);

(ii) the Declaration of Natalia Pokazanova in Support of Petition for an Order Under 28 U.S.C. § 1782(a), dated October 24, 2013 (the "October Pokazanova Decl.") (Ms. Pokazanova is counsel of record for Desside in the Russian Legal Proceedings and her October Declaration provides evidence regarding the status of the Russian Legal Proceedings as of late October 2013 and evidence as to the receptivity of the Russian Tribunal to receiving evidence pursuant to this Petition);

(iii) the Statement of Natalia Pokazanova in Support of an Application in Relation to an Order Under Section 28 of the United States Code, § 1782(a), dated November 19, 2013 (the "November Pokazanova Decl.") (providing information regarding the November 18th hearing in Russia).[1]

---

[1] An earlier version of the Memorandum of Law (discussing the application of all *Intel* factors) and the October Pokaznova Decl. were lodged with the Court on November 5, 2013.  It appears that the Court did not consider them in connection with its November 25 decision.  *See* Order, p. 3 (noting that the Application to Seal (lodged on November 5, 2013) requested return of the "underlying documents" if the Court declined to seal them).  As set out in the November Pokazanova Decl. (at pp. 4-5), Mozel repudiated the loan agreements containing the confidentiality clauses in open court in the Russian Legal Proceedings on November 18th, asserting (falsely) that the loan agreements were forgeries.  Mozel, having repudiated and denied the formation of the loan agreements, cannot now insist that Desside honor the confidentiality provisions of these same agreements. Desside is therefore free to seek the evidence it needs to prove the falsity of Mozel's denials on the public record and does so now in its Renewed Petition and supporting

## I.      NATURE OF THIS PROCEEDING

5.      This is an action for discovery in aid of a collection action brought by Desside against Russian Joint Stock Company Mozel ("Mozel") to enforce two loan agreements made by Desside, as Creditor, and Mozel, as Borrower, involving close to $30 million.  Mozel is in monetary default under these loan agreements. The proceeding is pending in the Arbitration Court of St. Petersburg and the Leningrad Region in the Russian Federation.  The ongoing proceedings are filed under Case Numbers A56-48493/2013 and A56-48505/2013.  The Russian Legal Proceedings are described more fully below and in the October and November Pokazanova Declarations.

6.      This action arises under 28 U.S.C. § 1782(a), which authorizes this Court to order a person residing or found in this District "to give his testimony . . . or provide a document or other thing . . . for use in a proceeding in a foreign international tribunal."

7.      As demonstrated below, Desside is entitled to an order from this Court requiring all Respondents to produce documents and provide testimony as set forth in the subpoenas appended hereto as Exhibits A, B, C, D, and E.

## II.     PARTIES TO THIS PROCEEDING

8.      Petitioner Desside is a corporation organized and existing under the laws of the British Virgin Islands.

9.      On information and belief, Respondent Megawine is a California corporation with its headquarters and principal place of business located at 16129 Cohasset Street, Van Nuys, California 91406.  On its website, Megawine states:

> MEGAWINE is an exporter of wine and spirits from around the world, including brands from California to Eastern Europe. According to the U.S. Bureau of the Census Trade Data, Megawine, Inc. is accountable for more than one-half of U.S. combined wine and

Memorandum of Law, and in the Pokazanova Declarations of October and November 2013 (both of which are now on file for the Court to review).

beer export to the Republics of Former USSR. Starting January 2005, a year after Megawine's first container shipment of wines from The Wine Group, more than 50% percent of all U.S. exports of wine to the Russian Federation were exported by Megawine.

www.megawine.com (see "About" tab).   On further information and belief, Megawine has at all relevant times maintained a continuous course of dealing with Mozel involving the sale and export of wine and spirits from the United States to Mozel in St. Petersburg for distribution within the Russian Federation.

10.    On information and belief, Respondent Tomchin resides at 24720 Calvert Street, Woodland Hills, California 92367, and holds a Belarusian passport. On further information and belief, Tomchin is the President, Chief Executive Officer, and principal beneficial owner of Megawine; he is also the Chief Executive Officer and principal beneficial owner of Mozel.   Tomchin is a guarantor of Mozel's indebtedness to Desside.

11.    On information and belief, Respondent Lukina resides at 24720 Calvert Street, Woodland Hills, California 92367, and is married to Tomchin.  On information and belief Lukina is also known as Natalia Loukina and is employed by Megawine as the head of its Export Department.   www.megawine.com (see "Contacts" tab).  Lukina signed the guaranty agreement as "Guarantor's Spouse" and agreed to subordinate any claim she may have against Tomchin to his obligation to Desside under the guaranty.   On further information and belief, Lukina is a minority shareholder of Somelye LLC, the sole shareholder of Mozel.

12.    On information and belief, Respondent Grandpoint Bank has a branch location at 16861 Ventura Boulevard, Suite 100, Encino, California USA 91436, and operates throughout the state of California; on further information and belief, Megawine maintains one or more bank accounts with Grandpoint Bank, formerly known as First Commerce Bank, including, specifically, accounts to which Desside wired funds drawn on the credit lines that are the subject of the Russian Legal Proceedings.

13.     On information and belief, Respondent City National Bank is headquartered at 555 South Flower Street, Los Angeles, California 90071; on further information and belief, Megawine maintains one or more bank accounts with City National Bank including, specifically, accounts to which Desside wired funds drawn on the credit lines that are the subject of the Russian Legal Proceedings.

## III.     JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of Petitioner's claims under 28 U.S.C. § 1782(a) by the terms of that statute and under the federal question statute, 28 U.S.C. § 1331, because these claims arise under the laws of the United States.

15.     Venue is proper in this District under 28 U.S.C. § 1782(a) because Respondents reside or can be found in this District.

## IV.     BACKGROUND

16.     Beginning as early as September 2006, Desside supplied working capital lines of credit to Mozel.  In the Russian Legal Proceedings, Desside seeks to enforce two such credit line agreements, one for the provision of credit to Mozel in United States Dollars and one for the provision of credit to Mozel in Euros.  The unpaid principal balances are $16 Million and €9.2 Million.

### A.     Mozel's $16 Million Indebtedness to Desside

17.     The Dollar-denominated credit line commenced under a loan agreement dated September 1, 2006, whereby Desside provided Mozel a $4 million line of credit for the financing of working capital (the "2006 Credit Line").  A true and correct copy of the 2006 Credit Line Agreement is attached hereto as Exhibit F.

18.     The 2006 Credit Line had a maturity date of August 31, 2007, with quarterly interest payments due beginning December 31, 2006.

19.   Desside and Mozel reached a subsequent agreement on June 23, 2008, which extended the maturity date of the 2006 Credit Line to June 31, 2010 [sic].

20.   Mozel subsequently failed to repay the principal debt, as well as interest, of the 2006 Credit Line.  As of March 9, 2012, Mozel owed Desside $4,572,000 under the 2006 Credit Line.

21.   Desside and Mozel also reached a separate contract, dated July 1, 2008, which extended a line of credit totaling $10 million for financing of working capital (the "2008 Credit Line").  A true and correct copy of the 2008 Credit Line Agreement is attached hereto as Exhibit G.

22.   The 2008 Credit Line had a maturity date of June 31, 2010 [sic], with quarterly interest payments due beginning October 31, 2008.

23.   Mozel subsequently failed to repay the principal debt, as well as interest, of the 2008 Credit Line.  As of March 9, 2012, Mozel owed Desside $11,428,000 under the 2008 Credit Line.

24.   Thus, as of March 9, 2012, the debt under the 2006 Credit Line and the 2008 Credit Line (collectively, the "Dollar Credit Lines") totaled approximately $16 million.

25.   By agreement dated November 12, 2012, Desside and Mozel converted Mozel's total debt to Desside arising from the Dollar Credit Lines into a loan obligation of $16 million (the "2012 Loan").  A true and correct copy of the 2012 Loan Agreement is attached hereto as Exhibit H.[2]

26.   The terms of the 2012 Loan stated that Desside will provide Mozel with a non-revolving line of credit in the amount of $16 million for the financing of working capital at 8% interest per annum.  The 2012 Loan included three maturity dates:  (1) $1,500,000 by December 31, 2013;  (2) $7,500,000 by December 31, 2014; and (3) $7,000,000 by December 31, 2015.  *Id*., p. 4.

---

[2] Desside can provide a certified copy of the 2012 Loan Agreement (which includes the Dollar Credit Lines as attachments) at the Court's request.

27.    The 2012 Loan required quarterly interest payments beginning on April 30, 2012.

**B.    The €9.2 Million Loan Obligation**

28.    The Euro-denominated credit line commenced under a loan agreement dated December 7, 2010, whereby Desside provided Mozel a €2 million line of credit for the financing of working capital (the "2010 Credit Line").  A true and correct copy of the 2010 Credit Line is attached hereto as Exhibit I.

29.    The 2010 Credit Line had a maturity date of June 30, 2014, with quarterly interest payments due beginning April 30, 2011.

30.    As of December 11, 2012, the outstanding principal balance on the 2010 Credit Line was €2 million, as Desside had provided the full amount of the credit to Mozel, but Mozel had not yet made any principal payments.

31.    Desside and Mozel reached a separate contract, dated February 12, 2011, which extended a line of credit totaling €4.5 million for the financing of working capital (the "February 12, 2011 Credit Line"). A true and correct copy of the February 12, 2011 Credit Line is attached hereto as Exhibit J.

32.    The February 12, 2011 Credit Line had a maturity date of July 30, 2012, with quarterly interest payments beginning April 30, 2011.

33.    Mozel subsequently failed to repay the principal debt on the February 12, 2011 Credit Line.  As of December 11, 2012, the outstanding principal balance remained €4.5 million.

34.    Desside and Mozel reached a third Euro contract, dated February 14, 2011, which extended a line of credit totaling €2.7 million for the financing of working capital (the "February 14, 2011 Credit Line"). A true and correct copy of the February 14, 2011 Credit Line is attached hereto as Exhibit K.

35.    The February 14, 2011 Credit Line had a maturity date of July 30, 2013, with quarterly interest payments due beginning April 30, 2011.

36.    As of December 11, 2012, the outstanding principal balance of the

February 14, 2011 Credit Line remained €2.7 million.

37.     Thus, as of December 11, 2012, the debt under the 2010 Credit Line, the February 12, 2011 Credit Line, and the February 14, 2011 Credit Line (collectively, the "Euro Credit Lines") totaled €9.2 million.

38.     Similar to the Dollar Credit Lines, Desside and Mozel entered into an agreement dated January 24, 2013 to convert Mozel's total debt to Desside arising from the Euro Credit Lines into a loan obligation for €9.2 million (the "2013 Loan").  A true and correct copy of the 2013 Loan is attached hereto as Exhibit L.[3]

39.     The terms of the 2013 Loan stated that Desside will provide Mozel with a non-revolving line of credit in the amount of €9.2 million for the financing of working capital at 8% interest per annum.   The 2013 Loan included two maturity dates:  (1) €2,700,000 by December 31, 2012;  and (2) €6,500,000 by December 31, 2013.  *Id.*, p. 4.

40.     The 2013 Loan required quarterly interest payments beginning on April 30, 2012.

41.     The agreements creating the U.S. Credit Lines, the Euro Credit Lines, the 2012 Loan, and the 2013 Loan, were all signed by Tomchin as principal owner and CEO of Mozel.

C.     **The Personal Guaranty**

42.     On March 1, 2013, Tomchin entered into a personal Guaranty with Desside, in which he personally guaranteed Mozel's obligations under the 2013 Loan should Mozel fail to repay the debt.  A true and correct copy of the Guaranty is attached hereto as Exhibit M.

43.     Tomchin's spouse, Natalia Lukina, also joined in the Guaranty, accepting that Desside's rights against Tomchin took priority over any rights she may have against Tomchin or his assets.

---

[3] Desside can provide a certified copy of the 2013 Loan Agreement (which includes the Euro Credit Lines as attachments) at the Court's request.

44.    Disputes arising from the Guaranty are to be arbitrated in London, United Kingdom.  *See id.*, p. 11 (calling for arbitration in London).   Although Tomchin is named as a Third Party in the Russian Legal Proceedings, enforcement of the guaranty is not in issue in the Russian Legal Proceedings.  An arbitration to enforce the guaranty has not been initiated in London.

**D.    Mozel Draws from its Credit Lines**

45.    From 2006 to 2011, Mozel made dozens of draws on the Dollar and Euro Credit Lines. The draws were accomplished by written requests from Mozel to Desside that referenced the applicable credit line and "ask[ed]" Desside "to pay" a stated sum "to our supplier."  The requests typically took the following form:

### Joint Stock Company
### "MOZEL"

pr. Shaumyana 18, St. Petersburg, Russia, Tel. (812) 528-10-83; Fax (812) 528-96-73

25/02/2011                                   **Attn.: Desside Holdings Ltd**

**Payment #1**

We ask to pay 550 000 **EUR** (Five hundred fifty thousand EURO) by agreement # 12-02-2011 to account of our Supplier:

**MEGAWINE INC.**

**ADDRESS:**          **14718 RAYMER STREET, VAN NUYS, CALIFORNIA USA 91405**

**ACCOUNT:**          **9400642**

**BANK NAME:**       **CITY NATIONAL ABNK**

**BANK ADDRESS:**   **LOS ANGELES, CALIFORNIA USA**

**SWIFT:**              **CINAUS6L**

General Director                                          Vadim Tomchin

A true and correct copy of each of the pertinent draw requests is attached hereto as Exhibit N.

46.    Each draw request was signed by Tomchin in his capacity as General Director of Mozel.

47.    Megawine was one of the principal "suppliers" to whom Desside made payments as a result of Mozel's draw requests.  Mozel made twenty-one

such requests to Desside for payments to Megawine and the resulting payments honoring such requests equaled $6.5 million from the Dollar Credit Lines and €4.55 million from the Euro Credit Lines.

48.    All of the payments to Megawine from the Dollar Credit Lines were made to a Megawine account with First Commerce Bank (now known as Greenpoint Bank).

49.    All of the payments to Megawine from the Euro Credit Lines were made to a Megawine account with City National Bank.

50.    Mozel made similar draw requests to Desside for payment to the following additional entities:

- EINIG-ZENZEN GmbH & Co. KG;

- CASA VINICOLA CALDIROLA S.P.A.;

- CAT-CONSULTING AND TRADING AG.

**E.    Mozel Defaults on the 2012 and 2013 Loan Agreements**

51.    Mozel defaulted on its obligations to Desside by failing to timely make the required interest payments under the 2012 and 2013 Loans. Pursuant to the 2012 and 2013 Loan agreements, and in accordance with applicable law, Desside accelerated the maturity date, and, upon Mozel's failure to respond to a proper demand for payment, initiated the Russian Legal Proceedings against Mozel.

**F.    The Russian Legal Proceedings**

52.    In July 2013, Desside filed the Russian Legal Proceedings in the Russian Tribunal.  October Pokazanova Decl., ¶ 9.  Desside filed separate actions to enforce the Dollar denominated loan agreements and the Euro denominated loan agreements.  *Id*.  Translations of Desside's Statement of Claims in both actions are attached to the October Pokazanova Decl. as Exhibits 1 and 2.[4]

---

[4] Actual certified copies of the translations of the Statements of Claims are not available at the time of filing.  The translator has verified that the copies presented

53.     In response to the Statements of Claim filed by Desside, Mozel presented Statements of Defense to the Russian Tribunal.  October Pokazanova Decl., ¶ 10.   True and correct copies of the Mozel Statements of Defense (in Russian) along with certified English translations are attached to the October Pokazanova Decl. as Exhibit 3.  In the Statements of Defense, Mozel denies "that it concluded" the contracts dated September 1, 2006 (the 2006 Credit Line) and July 1, 2008 (the 2008 Credit Line) that provide the basis for the original extension of credit under the Dollar Credit Lines.  October Pokazanova Decl. Ex. 3-1 at 4.  It also denies that it concluded the agreement of November 12, 2012 (the 2012 Loan) "on the replacement" of the debt arising from earlier contracts.  *Id*.  Mozel therefore represented to the Russian Tribunal that it "has no relationship with [Desside] whatsoever, and had not previously received any monetary funds from [Desside]."  *Id.*  Mozel makes similar denials regarding the Euro Credit Lines and the 2013 Loan.  October Pokazanova Decl. Ex. 3-2 at 15.

54.     Although Mozel admits to having had a contractual relationship with Megawine pre-dating the credit line agreements and also admits to having had a contractual relationship with CAT-Consulting and Trading AG, it asserts that these relationships exist by reason of other contracts and not the Loan Agreements that Desside seeks to enforce.  October Pokazanova Decl. Ex. 3-1 at 5.  Mozel insists that it satisfied its obligations under these other contracts with its own funds and not money drawn on the Dollar or Euro Credit Lines provided by Desside.  *Id.*  It denies altogether any relationship with Einig-Zenzen GMBH & Co. KG and Casa Vinicola Caldirola S.P.A.  *Id.*

55.     Finally, Mozel makes several evidentiary objections, arguing – apparently – that the contracts and/or the draw requests are inadmissible for failure

---

as Exhibits 1 and 2 to the October Pokazanova Declaration are indeed true and correct translations.  Counsel for Desside is in the process of obtaining the translator's written certification and can make it available at the Court's request.

---

to comply with the Russian equivalent of the original evidence rule (see Fed. R. Evid. 1002), that Desside has failed to establish the authenticity of the contracts and/or the draw requests, and failed to comply with Hague Convention requirements for the legalization of foreign public documents.  *Id.* at 6.

56.    The most recent hearing in the Russian Legal Proceedings took place on November 18, 2013.  November Pokazanova Decl. p. 2 ¶ 1.

57.    At this hearing, Desside informed the Russian Tribunal of the pendency of the petition before this Court and asked that the petition be made part of the record in the Russian Legal Proceedings.  The judge granted that request.  *Id.* at pp. 2-3, ¶ 2.

58.    The presiding judge inquired about the timeframe for when the Russian Tribunal could expect to receive the evidence requested by Desside, to which Ms. Pokazanova stated that she was unsure.  *Id.*

59.    The judge adjourned the Russian Legal Proceedings until December 16, 2013, at which point the Russian Tribunal expects Desside to present, among other things, information regarding the expected timeline for obtaining the discovery sought by Desside's petition in the U.S. Courts.  *Id.* at pp. 6-7, ¶ 4.

## V.    THE SUPREME COURT'S *INTEL* FACTORS STRONGLY FAVOR GRANTING DESSIDE'S PETITION

60.    In *Intel*, the Supreme Court set forth several non-exclusive factors to aid district courts in determining how to exercise their discretion in considering petitions under 28 U.S.C. § 1782.  These factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery is "unduly intrusive or

burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

61.     As set forth in detail Desside's Memorandum in Support of its Renewed Petition (at p. 15), Megawine, Lukina, Grandpoint Bank, and City National Bank are not parties to the Russian Legal Proceedings.   Although Tomchin is a "Third Party" to the Russian Legal Proceeding involving the Euro Credit Lines, discovery in this District is still permissible and warranted because Tomchin is a resident of the United States and found in this District, and obtaining documents and deposition testimony from Tomchin would be more efficient here than in Russia.  *Id.*, pp. 15-16.

62.     Desside seeks highly relevant information that will assist the Russian Tribunal.

63.     Megawine, Tomchin, Lukina, Grandpoint Bank, and City National Bank are likely to have in their custody, possession, and control evidence that bears directly on the issues in dispute in the Russian Legal Proceedings.   In particular, Megawine is likely to have books and records including bank statements, records of wire transfers, shipping orders and the like that will bear directly on the truthfulness of Mozel's denials (a) that it maintains a present relationship with Mozel, (b) that Desside made payments to Megawine at Mozel's request and for Mozel's benefit as reflected in the draw requests attached as Exhibit N, and (c) the authenticity of documents relevant to the Russian Legal Proceedings.  October Pokazanova Decl., ¶ 15.

64.     Tomchin's documents and testimony as the CEO and owner of Megawine are directly relevant for the reasons stated in the preceding paragraph. Further, his documents and testimony as CEO and owner of Mozel are also directly relevant to all of Mozel's denials.  Among other things, Tomchin is signatory for Mozel to (a) all of the contracts that Mozel now asserts were never "concluded" and (b) each of the draw requests that Mozel now asserts are inauthentic and/or

were never acted upon by Desside.  Similarly, Tomchin's testimony as Guarantor is directly relevant to Mozel's denial of the validity of the debt claimed by Desside with respect to the Euro credit line.  The Guaranty, which Tomchin executed and had notarized Los Angeles County, recites that the €9.2 Million "obligation[] . . . assumed by him in this Guarantee are legal, valid, binding and enforceable obligations."  Exhibit M, p. 6.  Tomchin's testimony as Guarantor is thus directly relevant to Mozel's current denials in the Russian Legal Proceedings.  October Pokazanova Decl., ¶ 16.

65.     For the same reasons, Lukina's testimony as Spouse of the Guarantor is directly relevant to the issues in the Russian Legal Proceedings.  Further, as Megawine's head of the Export Department and minority shareholder of Somelye LLC, the sole shareholder of Mozel, she is likely to have evidence bearing on (a) Mozel's current denials of its relationship with Megawine and (b) Mozel's denial that it received the wire transfers reflected in the draw requests.  *Id.*, ¶ 17.

66.     The records of Grandpoint Bank and City National Bank with respect to accounts owned by Megawine have a substantial tendency in reason to prove or disprove Mozel's present denials that it used funds provided by Desside to pay for goods shipped by Megawine.  (See Fed. R. Evid. 401.)  Presumably, these banks will have records showing receipt of the payments requested by the draws and Grandpoint Bank's and City National Bank's crediting of those payments to Megawine's accounts.  *Id.*, ¶ 18.

67.     The burden of demonstrating that the foreign tribunal would be unreceptive to the evidence rests with the party opposing the application.  *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).  See Memorandum of Law in Support of Renewed Petition, at pp. 20-21.

68.     Here, the Russian Tribunal has already expressed an interest in the evidence sought by Desside's petition.  At a hearing on November 18, 2013, the Russian Tribunal agreed to make Desside's petition before this Court part of the

record before it, and also inquired as to the expected timeframe for when the evidence sought could be obtained in the United States. November Pokazanova Decl., pp. 2-3, ¶ 2-4. On December 16, 2013, the Russian Tribunal expects Desside to provide more information regarding the expected timeline for obtaining the evidence at issue here. *Id*. at pp. 6-7, ¶ 4. These inquiries indicate that the Russian Tribunal is interested in considering the evidence sought in this proceeding, subject to understanding how long it might take to obtain the evidence. The Russian Tribunal was given an opportunity to reject the possibility of Desside submitting evidence collected in the United States, and rather than doing so, it merely asked how long it would take to collect such evidence. As such, Desside is prepared to move quickly upon issuance of an Order from this Court so as not to unduly delay the Russian Legal Proceedings.

69. No foreign discovery restrictions bar Desside's requested discovery. As demonstrated in the October Pokazanova Declaration, Desside is not attempting to end-run Russian proof-gathering restrictions or policies. Desside's request for discovery assistance is a good faith effort to obtain probative evidence regarding the business and contractual relationship between Megawine and Mozel, the nature of payments from Desside to Megawine, and the authenticity of documents, key questions of fact in the proceedings before the Russian Tribunal. Desside is not aware of any restrictions on proof-gathering procedures that would prohibit obtaining the discovery it seeks through § 1782. October Pokazanova Decl., ¶ 20, 22. Indeed, it appears that the Russian Tribunal is interested in receiving such evidence. November Pokazanova Decl., p. 7. Further, as established in the November Pokazanova Declaration (p. 4), Mozel was represented at the November 18th proceeding and, presumably, had the opportunity to object that this proceeding represented an effort to circumvent Russian restrictions on proof-gathering. Yet, the Russian court made the order it did, which is indicative that this proceeding in no way interferes with or circumvents any Russian proof-

gathering restrictions.

70.     Desside's discovery requests are not unduly intrusive or burdensome. Rather, the universe of documents sought is likely to be reasonably focused and easily searchable, and the testimony will be limited to specific topics discussed herein, avoiding any undue burden on Respondents.

71.     This application is made in good faith and to promote the ends of justice.

72.     Like most § 1782 applications, this application is made on an *ex parte* basis for the sake of speed and economy.

## VI.   <u>CLAIM FOR RELIEF</u>

73.     The allegations of paragraphs 1-72 above are incorporated by reference as if fully set forth herein.

74.     Section 1782(a) authorizes this Court to order a person within its jurisdiction "to give his testimony or statement or to produce a document . . . for use in a proceeding in a foreign or international tribunal."   An order under § 1782(a) may be entered on the application of "any interested person."

75.     The Russian Legal Proceedings qualify as "a proceeding in a foreign or international tribunal" within the meaning of § 1782(a).

76.     Desside qualifies as an "interested person" within the meaning of § 1782(a).

WHEREFORE, petitioner Desside Holdings Limited respectfully requests the entry of an *ex parte* order, authorizing the service on respondents Megawine, Inc., Vadim L. Tomchin, Natalia Lukina, Grandpoint Bank, and City National Bank of subpoenas, in substantially the form of the drafts annexed as Exhibits A, B, C, D, and E to obtain evidence for use in the Russian Legal Proceedings.

Respectfully submitted this 27th day of November, 2013.

**BUCKLEYSANDLER LLP**

/s/ Fredrick S. Levin
Richard E. Gottlieb (State Bar No. 289370)
Fredrick S. Levin (State Bar No. 187603)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Phone: (310) 424-3984
Facsimile: (310) 424-3960

*Attorneys for Petitioner Desside
Holdings Limited*

---