**BUCKLEYSANDLER LLP**
RICHARD E. GOTTLIEB (State Bar No. 289370)
FREDRICK S. LEVIN (State Bar No. 187603)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Phone: (310) 424-3984
Facsimile: (310) 424-3960
Rgottlieb@Buckleysandler.Com
Flevin@Buckleysandler.Com

Attorneys for Petitioner Desside Holdings Limited

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DESSIDE HOLDINGS LIMITED,

                Petitioner,

vs.

MEGAWINE, INC., VADIM L. TOMCHIN, NATALIA LUKINA, GRANDPOINT BANK, and CITY NATIONAL BANK,

                Respondents.

Case No. 13-cv-8211-JAK-JCG

**MEMORANDUM OF LAW IN SUPPORT OF RENEWED PETITION FOR AN ORDER UNDER 28 U.S.C. § 1782(a)**

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ......................................................................... 1

BACKGROUND ........................................................................... 2

EX PARTE APPLICATIONS UNDER 28 U.S.C. § 1782 ARE ROUTINE AND PROPER .................................................................................. 9

LEGAL STANDARDS ................................................................ 10

ARGUMENT ............................................................................. 11

I.   Desside's Application Meets The Threshold Requirements Of Section 1782. ........................................................... 12

    A.   The Parties From Whom Discovery Is Sought Are Found In This District............................................................... 12

    B.   The Discovery Sought Is For Use In A Foreign Tribunal. ....... 13

    C.   Desside Is An "Interested Person" In The Foreign Proceeding Within The Meaning Of Section 1782................................ 13

II.   The Supreme Court's *Intel* Factors Strongly Favor Granting Desside's Application. ......................................................... 14

    A.   Megawine, Lukina, Grandpoint Bank, And City National Bank Are Not Parties To The Foreign Proceedings........................... 14

    B.   Although Tomchin Is A "Third Party" To The Russian Legal Proceeding Involving the Euro Credit Lines, Discovery In This District Is Still Permissible and Warranted............................... 15

    C.   Desside Seeks Highly Relevant Information That Will Assist The Foreign Tribunal. ............................................................ 16

    D.   No Foreign Discovery Restrictions Bar Desside's Requested Discovery. ......................................................................... 19

    E.   Desside's Discovery Requests Are Not Unduly Intrusive Or Burdensome. ..................................................................... 21

CONCLUSION ........................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002) ...............................................................................................................11

*In re Application of Carsten Rehder Schiffsmakler Und Reederel Gmbh & Co.*, 2008 WL 4642378 (M.D. Fla. Oct. 17, 2008).........................................15

*In re Application of Futurecorp Int'l Pty Ltd.*, 2012 WL 5818288 (N.D. Cal. Nov. 15, 2012).................................................................................................21

*In re Application of Imanagement Services, Ltd.*, 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005).................................................................................................20

*In re Application of Ishihara Chemical Co., Ltd.*, 121 F. Supp. 2d 209, 211 n.1 (E.D.N.Y. 2000) ...........................................................................................9

*In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004).............................................................................................................20

*In re Application of Roebers*, 2012 WL 2862122 (N.D. Cal. Jul 11, 2012)............21

*In re Bayer AG*, 146 F.3d 188 (3d Cir. 1998)................................................. 16, 19

*In re Esses*, 101 F.3d 873 (2d Cir. 1996).........................................................20

*In re Euromepa S.A.*, 51 F.3d 1095 (2d Cir. 1995).......................................... 16, 20

*In re Ex Parte Application of Ontario Principals' Council, et al.*, 2013 WL 6073517 (N.D. Cal. Nov. 8, 2013) ...............................................................21

*In re Letters Rogatory from Tokyo Dist., Tokyo Japan*, 539 F.2d 1216 (9th Cir. 1976)...............................................................................................................9

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557 (9th Cir. 2011).....................................................................................................17

*In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004)...................15

*In re Republic of Ecuador*, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010)............11

*In re Servicio Pan American de Proteccion, C.A.*, 354 F. Supp. 2d 269 (S.D.N.Y 2004)...............................................................................................................15

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004)............... passim

*London v. Does*, 279 F. App'x 513 (9th Cir. 2008)................................................19

**Statutes**

28 U.S.C. § 1782(a) .......................................................................... passim

**Rules**

Fed. R. Evid. 1002 ....................................................................................8

L.R. 7-19.2 ................................................................................................9

Petitioner Desside Holdings Limited, by its attorneys BuckleySandler LLP, respectfully submits this memorandum of law in support of its renewed petition for an *ex parte* order under 28 U.S.C. § 1782(a) (the "Petition"), authorizing service of subpoenas directing the production of documents and testimony from respondents Megawine, Inc., Vadim L. Tomchin, and Natalia Lukina and directing production of documents from Grandpoint Bank and City National Bank (collectively, the "Respondents").

## **INTRODUCTION**

This is an action for discovery in aid of a collection action brought by Desside against Russian Joint Stock Company Mozel ("Mozel") to enforce two loan agreements made by Desside Holdings Limited ("Desside"), as Creditor, and Mozel, as Borrower, involving close to $30 million. Mozel is in monetary default under these loan agreements. The proceeding is pending in the Arbitration Court of St. Petersburg and the Leningrad Region (the "Russian Tribunal") in the Russian Federation. The ongoing proceedings are filed under Case Numbers A56-48493/2013 and A56-48505/2013 (the "Russian Legal Proceedings"). The Russian Legal Proceedings are described more fully below.

This action arises under 28 U.S.C. § 1782(a), which authorizes this Court to order a person residing or found in this District "to give his testimony . . . or provide a document or other thing . . . for use in a proceeding in a foreign international tribunal." As demonstrated below, Desside is entitled to an order from this Court requiring: (a) all Respondents to provide the documents identified in the subpoenas appended to this Petition as Exhibits A, B, C, D, and E and (b) Respondents Megawine, Tomchin and Lukina to appear before a certified court reporter to provide testimony pursuant to Fed. R. Civ. P. 26 and 30 on the subjects identified in Exhibits A, B, and C.

# BACKGROUND

Megawine is a California corporation with its headquarters and principal place of business located in Van Nuys, California.   On its website, Megawine states:

> MEGAWINE is an exporter of wine and spirits from around the world, including brands from California to Eastern Europe. According to the U.S. Bureau of the Census Trade Data, Megawine, Inc. is accountable for more than one-half of U.S. combined wine and beer export to the Republics of Former USSR. Starting January 2005, a year after Megawine's first container shipment of wines from The Wine Group, more than 50% percent of all U.S. exports of wine to the Russian Federation were exported by Megawine.

www.megawine.com (see "About" tab).   Megawine has at all relevant times maintained a continuous course of dealing with Mozel involving the sale and export of wine and spirits from the United States to Mozel in St. Petersburg for distribution within the Russian Federation.  Petition, ¶ 9.

Tomchin resides in Woodland Hills, California, and holds a Belarusian passport.  He is the President, Chief Executive Officer, and principal beneficial owner of Megawine.   He is also the Chief Executive Officer and principal beneficial owner of Mozel, and a guarantor of Mozel's indebtedness to Desside. Lukina, Tomchin's wife, also resides in Woodland Hills, California.   Lukina is apparently also known as Natalia Loukina and is employed by Megawine as the head of its Export Department.  www.megawine.com (see "Contacts" tab).  Lukina signed the same guaranty agreement as Tomchin as "Guarantor's Spouse," agreeing to subordinate any claim she may have against Tomchin to his obligation to Desside under the guaranty.  Lukina is also a minority shareholder of Somelye LLC, the sole shareholder of Mozel.  Petition, ¶¶ 10-11.

Grandpoint Bank (formerly known as First Commerce Bank) and City National Bank both operate in California and have locations or headquarters in the

Los Angeles area.  Megawine maintains bank accounts with both banks, including, specifically, accounts to which Desside wired funds drawn on the credit lines that are the subject of the Russian Legal Proceedings.  Petition, ¶¶ 12-13.

Beginning as early as September 2006, Desside supplied working capital lines of credit to Mozel.  In the Russian Legal Proceedings, Desside seeks to enforce two such credit line agreements, one for the provision of credit to Mozel in United States Dollars and one for the provision of credit to Mozel in Euros.  The unpaid principal balances are $16 Million and €9.2 Million.  Petition, ¶ 16.

Mozel's $16 Million Indebtedness to Desside

Mozel's dollar-denominated credit line commenced under a loan agreement dated September 1, 2006, whereby Desside provided Mozel a $4 million line of credit for the financing of working capital (the "2006 Credit Line").  The 2006 Credit Line had a maturity date of August 31, 2007, with quarterly interest payments due beginning December 31, 2006.  Desside and Mozel reached a subsequent agreement on June 23, 2008, which extended the maturity date of the 2006 Credit Line to June 31, 2010 [sic].  Mozel subsequently failed to repay the principal debt, as well as interest, of the 2006 Credit Line.  As of March 9, 2012, Mozel owed Desside $4,572,000 under the 2006 Credit Line.  Petition, ¶¶ 17-20.

Desside and Mozel also reached a separate contract, dated July 1, 2008, which extended a line of credit totaling $10 million for financing of working capital (the "2008 Credit Line").  The 2008 Credit Line had a maturity date of June 31, 2010 [sic], with quarterly interest payments due beginning October 31, 2008.  Mozel subsequently failed to repay the principal debt, as well as interest, of the 2008 Credit Line.  As of March 9, 2012, Mozel owed Desside $11,428,000 under the 2008 Credit Line.  Petition, ¶¶ 21-23.

Thus, as of March 9, 2012, the debt under the 2006 Credit Line and the 2008 Credit Line (collectively, the "Dollar Credit Lines") totaled approximately $16 million.  By agreement dated November 12, 2012, Desside and Mozel converted

Mozel's total debt to Desside arising from the Dollar Credit Lines into a loan obligation of $16 million (the "2012 Loan"). The terms of the 2012 Loan stated that Desside will provide Mozel with a non-revolving line of credit in the amount of $16 million for the financing of working capital at 8% interest per annum, and included three maturity dates: (1) $1,500,000 by December 31, 2013; (2) $7,500,000 by December 31, 2014; and (3) $7,000,000 by December 31, 2015. It also required quarterly interest payments beginning on April 30, 2012. Petition, ¶¶ 24-27.

The €9.2 Million Loan Obligation

Mozel's Euro-denominated credit line commenced under a loan agreement dated December 7, 2010, whereby Desside provided Mozel a €2 million line of credit for the financing of working capital (the "2010 Credit Line"). The 2010 Credit Line had a maturity date of June 30, 2014, with quarterly interest payments due beginning April 30, 2011. As of December 11, 2012, the outstanding principal balance on the 2010 Credit Line was €2 million, as Desside had provided the full amount of the credit to Mozel, but Mozel had not yet made any principal payments. Petition, ¶¶ 28-30.

Desside and Mozel reached a separate contract, dated February 12, 2011, which extended a line of credit totaling €4.5 million for the financing of working capital (the "February 12, 2011 Credit Line"). The February 12, 2011 Credit Line had a maturity date of July 30, 2012, with quarterly interest payments due beginning April 30, 2011. Mozel subsequently failed to repay the principal debt on the February 12, 2011 Credit Line. As of December 11, 2012, the outstanding principal balance remained €4.5 million. Petition, ¶¶ 31-33.

Desside and Mozel reached a third Euro contract, dated February 14, 2011, which extended a line of credit totaling €2.7 million for the financing of working capital (the "February 14, 2011 Credit Line"). The February 14, 2011 Credit Line had a maturity date of July 30, 2013, with quarterly interest payments due

beginning April 30, 2011.  As of December 11, 2012, the outstanding principal balance of the February 14, 2011 Credit Line remained €2.7 million.  Petition, ¶¶ 34-36.

Thus, as of December 11, 2012, the debt under the 2010 Credit Line, the February 12, 2011 Credit Line, and the February 14, 2011 Credit Line (collectively, the "Euro Credit Lines") totaled €9.2 million.  Similar to the Dollar Credit Lines, Desside and Mozel entered into an agreement dated January 24, 2013 to convert Mozel's total debt to Desside arising from the Euro Credit Lines into a loan obligation for €9.2 million (the "2013 Loan").  The terms of the 2013 Loan stated that Desside will provide Mozel with a non-revolving line of credit in the amount of €9.2 million for the financing of working capital at 8% interest per annum, required quarterly interest payments beginning on April 30, 2012, and included two maturity dates:  (1) €2,700,000 by December 31, 2012; and (2) €6,500,000 by December 31, 2013.  Petition, ¶¶ 37-40.

The agreements creating the U.S. Credit Lines, the Euro Credit Lines, the 2012 Loan, and the 2013 Loan, were all signed by Tomchin as principal owner and CEO of Mozel.  Petition, ¶ 41.

### The Personal Guaranty

On March 1, 2013, Tomchin entered into a personal Guaranty with Desside, in which he personally guaranteed Mozel's obligations under the 2013 Loan should Mozel fail to repay the debt.  Tomchin's spouse, Natalia Lukina, also joined in the Guaranty, accepting that Desside's rights against Tomchin took priority over any rights she may have against Tomchin or his assets.  Although Tomchin is named as a Third Party in the Russian Legal Proceedings, enforcement of the guaranty is not in issue in the Russian Legal Proceedings.  An arbitration to enforce the guaranty has not been initiated in London, the location required for arbitration by the Guaranty.  Petition, ¶¶ 42-44.

### Mozel Draws from its Credit Lines

From 2006 to 2011, Mozel made dozens of draws on the Dollar and Euro Credit Lines.   The draws were accomplished by written requests from Mozel to Desside that referenced the applicable credit line and "ask[ed]" Desside "to pay" a stated sum "to our supplier."   The requests typically took the following form:

---

**Joint Stock Company "MOZEL"**

pr. Shaumyana 18, St. Petersburg, Russia, Tel. (812) 528-10-83; Fax (812) 528-96-73

25/02/2011                                   Attn.: Desside Holdings Ltd

**Payment #1**

We ask to pay 550 000 **EUR** (Five hundred fifty thousand EURO) by agreement # 12-02-2011 to account of our Supplier:

**MEGAWINE INC.**

**ADDRESS:**          14718 RAYMER STREET, VAN NUYS, CALIFORNIA USA 91405

**ACCOUNT:**          9400642

**BANK NAME:**       CITY NATIONAL ABNK

**BANK ADDRESS:**   LOS ANGELES, CALIFORNIA USA

**SWIFT:**               CINAUS6L

General Director                                        Vadim Tomchin

---

Each draw request was signed by Tomchin in his capacity as General Director of Mozel.  Petition, ¶¶ 45-46.

Megawine was one of the principal "suppliers" to whom Desside made payments as a result of Mozel's draw requests.  Mozel made twenty-one such requests to Desside for payments to Megawine and the resulting payments honoring such requests equaled $6.5 million from the Dollar Credit Lines and €4.55 million from the Euro Credit Lines.  All of the payments to Megawine from the Dollar Credit Lines were made to a Megawine account with First Commerce Bank (now known as Greenpoint Bank), and all of the payments to Megawine from the Euro Credit Lines were made to a Megawine account with City National Bank.  Mozel made similar draw requests to Desside for payment to "EINIG-ZENZEN GmbH & Co. KG," "CASA VINICOLA CALDIROLA S.P.A.," and "CAT-CONSULTING AND TRADING AG."  Petition, ¶¶ 47-50.

### Mozel Defaults on the 2012 and 2013 Loan Agreements, Triggering the Russian Legal Proceedings

Mozel defaulted on its obligations to Desside by failing to timely make the required interest payments under the 2012 and 2013 Loans.  Pursuant to the 2012 and 2013 Loan agreements, and in accordance with applicable law, Desside accelerated the maturity date of the loans.  Petition, ¶ 51.  Upon Mozel's failure to respond to a proper demand for payment, Desside initiated the Russian Legal Proceedings against Mozel in July 2013 in the Russian Tribunal.  Declaration of Natalia Pokazanova ("October Pokazanova Decl."), ¶ 9.  Desside filed separate actions to enforce the dollar-denominated loan agreements and the Euro-denominated loan agreements.  *Id.*  Translations of Desside's Statement of Claims in both actions are attached to the October Pokazanova Decl. as Exhibits 1 and 2.[1]

---

[1] Actual certified copies of the translations of the Statements of Claims are not available at the time of filing.  The translator has verified that the copies presented as Exhibits 1 and 2 to the October Pokazanova Declaration are indeed true and correct translations.  Counsel for Desside is in the process of obtaining the translator's written certification and can make it available at the Court's request.

In response to the Statements of Claim filed by Desside, Mozel presented its Statement of Defense to the Russian Tribunal.  October Pokazanova Decl., ¶ 10.  A certified translation of the Mozel Statement of Defense is attached to the October Pokazanova Decl. as Exhibit 3.  In the Statement of Defense, Mozel denies "that it concluded" the contracts dated September 1, 2006 (the 2006 Credit Line) and July 1, 2008 (the 2008 Credit Line) that provide the basis for the original extension of credit under the Dollar Credit Lines.  October Pokazanova Decl. Ex. 3-1 at 4..  It also denies that it concluded the agreement of November 12, 2012 (the 2012 Loan) "on the replacement" of the debt arising from earlier contracts.  *Id.*  Mozel therefore represented to the Russian Tribunal that it "has no relationship with [Desside] whatsoever, and had not previously received any monetary funds from [Desside]."  *Id.*  Although Mozel admits to a contractual relationship with Megawine pre-dating the credit line agreements and also admits to having a contractual relationship with CAT-Consulting and Trading AG, it asserts that these relationships exist by reason of other contracts and not the Loan Agreements that Desside seeks to enforce.  *Id.*  Mozel insists that it satisfied its obligations under these other contracts with its own funds and not money drawn on the Dollar or Euro Credit Lines provided by Desside.  *Id.*  It denies altogether any relationship with Einig-Zenzen GMBH & Co. KG and Casa Vinicola Caldirola S.P.A.

Finally, Mozel makes several evidentiary objections, arguing – apparently – that the contracts and/or the draw requests are inadmissible for failure to comply with the Russian equivalent of the original evidence rule (*see* Fed. R. Evid. 1002), that Desside has failed to establish the authenticity of the contracts and/or the draw requests, and failed to comply with Hague Convention requirements for the legalization of foreign public documents.  *Id.*

The most recent hearing in the Russian Legal Proceedings took place on November 18, 2013.  Statement of Natalia Pokazanova ("November Pokazanova Decl."), p. 2 ¶ 1.  At this hearing, the presiding judge agreed to make Desside's

petition before this Court part of the record in the Russian Legal Proceedings, and inquired as to the timeframe for when the Russian Tribunal could expect to receive the evidence requested by Desside. *Id.* at pp. 2-3, ¶ 2. Counsel for Desside represented that she was unsure of the timeframe. *Id.* The judge subsequently adjourned the Russian Legal Proceedings until December 16, 2013, at which point the Russian Tribunal expects Desside to present, among other things, information regarding the expected timeline for obtaining the discovery sought by Desside's petition in the U.S. Courts. *Id.* at pp. 6-7, ¶ 4.

## EX PARTE APPLICATIONS UNDER 28 U.S.C. § 1782 ARE ROUTINE AND PROPER

As with applications for third-party subpoenas, it is common practice for applications for assistance under Section 1782 to be filed *ex parte*. *See In re Application of Ishihara Chemical Co., Ltd.*, 121 F. Supp. 2d 209, 211 n.1 (E.D.N.Y. 2000) ("Discovery requests of the type authorized by § 1782, however, '"are customarily received and appropriate action taken with respect thereto *ex parte*."' '"[S]uch ex parte applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or participate in it."') (citations omitted); *see also In re Letters Rogatory from Tokyo Dist., Tokyo Japan*, 539 F.2d 1216 (9th Cir. 1976) (granting *ex parte* application under 28 U.S.C. § 1782). Thus, this Petition may be heard without notice to Respondents since it will be given adequate notice of the subpoena once the Court permits Petitioner to serve it. L.R. 7-19.2.[2] All interested parties are given the same

---

[2] In its November 25 Order, the Court agreed with this reasoning. Order at 1. In addition, U.S.-based attorneys for Respondents, if any, are unknown to Desside (*see* LR 7-19), but when the subpoenas are served, Respondents' attorneys will have an opportunity to respond without being prejudiced in any way by an *ex parte* order. *In re Application of Ishihara Chemical Co.*, 121 F. Supp. 2d at 211 n. 1.

protections provided under a normal third-party subpoena, *i.e.*, the parties to the litigation, and the subpoenaed party, are served with a copy of the subpoena, and have the opportunity to object or quash the subpoenas once served.  Because the Petition meets the statutory requirements of § 1782 (which expressly provides that the Federal Rules of Civil Procedure will apply to any request and the request should not violate any evidentiary privilege) and the discretionary factors outlined by the Supreme Court weigh heavily in the Petitioner's favor, the Court should grant this *ex parte* Petition for an order under § 1782.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).

## LEGAL STANDARDS

Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege.  28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 246-47 (2004).  "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals."  *Intel*, 542 U.S. at 247.  Over time, Congress has "substantially broadened the scope of assistance federal courts could provide for foreign proceedings.  *Id.* at 247-48.  Section 1782 provides in part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).  The statute sets forth three threshold requirements that, if

met, authorize a district court to grant an application:  (1) the discovery is sought from a person residing in the district of the court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is an "interested person."  *See Intel*, 542 U.S. at 264-65; *In re Republic of Ecuador*, 2010 WL 3702427, at *4 (N.D. Cal. Sept. 15, 2010).

Even if the above threshold requirements are met, district courts retain discretion to determine what discovery, if any, should be permitted.  *Intel*, 542 U.S. at 264.  In *Intel*, the Supreme Court set forth several non-exclusive factors to aid district courts in determining how to exercise their discretion.   These factors include: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the discovery is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264-65; *see also Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002).

## **ARGUMENT**

Desside meets each of the threshold requirements of § 1782, and all of the *Intel* discretionary factors weigh heavily in favor of granting Desside's application.  *First*, the application is filed in "the district in which [the] person[s] reside[]" because all five respondents are found in this District.  Petition, ¶¶ 9-13; 28 U.S.C. § 1782(a).   *Second*, Desside seeks the discovery "for use in a proceeding in a foreign . . . tribunal," specifically the Arbitration Court of St. Petersburg and the Leningrad Oblast.   *Third*, Desside is qualified as an "interested person[]" in the foreign proceedings.   *See id.*; *see also Intel*, 542 U.S. at 256 (litigants are a common example of "interested persons").

Further, the additional factors identified by the Supreme Court in *Intel Corp.* for use in analyzing § 1782 applications favor granting Desside's request.  *First*, Megawine, Lukina, Grandpoint Bank, and City National Bank are not participants in the foreign proceedings, and § 1782 provides an effective mechanism for obtaining this targeted discovery.  Although Tomchin is a third party to one of the foreign proceedings, the evidence sought is not located within the territorial reach of the Russian Tribunal, Tomchin is beyond the jurisdictional reach of the Russian Tribunal, and discovery in this venue would be more efficient.  *Second*, the foreign jurisdiction at issue (Russia) is receptive to the types of discovery sought by Desside.  *Third*, there are no foreign discovery restrictions that bar Desside's requested discovery.  *Fourth*, the discovery requested is narrowly tailored to avoid undue burden.    Accordingly, Desside requests that the Court enter an order permitting Desside to serve the subpoenas, attached as Exhibits A, B, C, D, and E to this Petition.

# I.   DESSIDE'S   APPLICATION   MEETS   THE   THRESHOLD REQUIREMENTS OF SECTION 1782.

## A.   The Parties From Whom Discovery Is Sought Are Found In This District.

By this Application, Desside seeks limited discovery from Respondents, all of whom reside or are found in this District.  28 U.S.C. § 1782(a).  Megawine has its principal place of business and headquarters at 16129 Cohasset Street, Van Nuys, CA 91406.  Petition, ¶ 9.  Tomchin and Lukina live at 24720 Calvert Street, Woodland Hills, California 91367.  *Id*., ¶¶ 10-11.  Grandpoint Bank has several locations in the Los Angeles area, including a location at 16861 Ventura Boulevard, Suite 100, Encino, California (the location to which Desside sent several Megawine payments).  *Id.,* ¶ 12.  City National Bank's headquarters is located at 555 South Flower Street, Los Angeles, California 90071.  *Id.,* ¶ 13.  Thus, the appropriate district court for this § 1782 application is the Central

District of California, and the first statutory requirement is satisfied.

**B.    The Discovery Sought Is For Use In A Foreign Tribunal.**

The information sought here is for use in a proceeding in a "foreign tribunal" within the meaning of § 1782.  Desside seeks information from Respondents to assist in a proceeding in the Arbitration Court of St. Petersburg and the Leningrad Region (Case Nos. A56-48493/2013 and A56-48505/2013).  The Arbitration Court is established by the Constitution of the Russian Federation, as well as Russian federal constitutional law.  October Pokazanova Decl., ¶ 3.  The court exercises the judicial power of the Russian Federation, and its competence to act in the Russian Legal Proceedings does not exist by virtue of any purely private agreement.  *Id.* The Arbitration Court of St. Petersburg and the Leningrad Region is a court of first instance that will decide the parties' dispute on the merits, permit the gathering and submission of evidence by the parties, and ultimately will issue an award that will be binding on the parties and subject to judicial review.  *Id.*, ¶¶ 4-6.  Its decisions are reviewed by the 13th Arbitration Appeal Court.  *Id.*, ¶ 6.

Despite its name, the Arbitration Court of St. Petersburg and the Leningrad Region is <u>not</u> a <u>private</u> foreign arbitration.  *Id.*, ¶ 3-6.  The factors listed in the *Intel* decision leave no doubt that the Arbitration Court of St. Petersburg and the Leningrad Region is considered a foreign adjudicative body that qualifies as an "International Tribunal" under § 1782.  *Intel*, 542 U.S. at 248-49 (observing that the legislative history for § 1782 indicates that the word "tribunal" was added to ensure that discovery assistance was liberally extended to "conventional courts" and "administrative and quasi-judicial proceedings") (quoting S. Rep. No. 1580, 88th Cong., 2d Sess., 7 (1964)).

**C.    Desside Is An "Interested Person" In The Foreign Proceeding Within The Meaning Of Section 1782.**

The Supreme Court has acknowledged that the term "interested person" should be interpreted broadly and includes both litigants as well as other parties

who possess a reasonable interest in obtaining judicial assistance.  *Intel*, 542 U.S. at 256-57.  Desside, as one of the parties to the proceeding before the Russian Tribunal, is an "interested person" within the purview of the statute.  *Id.* at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782").

Thus, the Petition before this Court easily satisfies all of the statutory prerequisites to relief under 28 U.S.C. § 1782(a): (1) Each party from whom discovery is sought is found in this District; (2) the discovery sought is for use in a foreign tribunal, and (3) the requesting party – Desside – is an interested person in the foreign proceeding.

## II. THE SUPREME COURT'S *INTEL* FACTORS STRONGLY FAVOR GRANTING DESSIDE'S APPLICATION.

### A. Megawine, Lukina, Grandpoint Bank, And City National Bank Are Not Parties To The Foreign Proceedings.

The first *Intel* factor – whether "the person from whom discovery is sought is a participant in the foreign proceeding" – is satisfied because Megawine, Lukina, Grandpoint Bank, nor City National Bank are not parties to the foreign proceedings.  *See Intel*, 542 U.S. at 264 (noting that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid") Because Megawine, Grandpoint Bank, and City National Bank are not a parties to the Russian proceedings and do not operate their business in Russia, they lie beyond the Russian court's jurisdictional reach.  Lukina, too, is outside of the Russian court's jurisdictional reach, as she is a resident of the United States.  This factor favors granting Desside's petition as to Megawine, Lukina, Grandpoint Bank, and City National Bank.

**B.      Although Tomchin Is A "Third Party" To The Russian Legal Proceeding Involving the Euro Credit Lines, Discovery In This District Is Still Permissible and Warranted.**

Although Tomchin is listed as a "Third Party" in the Russian Legal Proceeding respecting the Euro credit lines, discovery from Tomchin pursuant to this petition is still warranted.  Tomchin is a mere third party to the proceeding and, accordingly, under Russian procedure, his participation in the Russian Legal Proceedings is limited.  Because the guaranty is subject to English, not Russian, law, it is not enforceable by the Russian Tribunal.  October Pokazanova Decl., ¶ 25.  Tomchin's status as a third party does not entitle Desside to obtain testimony or documentary evidence from him in the Russian Legal Proceedings.  *Id.*  Further, because Tomchin is a resident of California and holds a Belarusian passport, the Russian Tribunal has no effective means of compelling Tomchin to produce the evidence sought, as he is neither a Russian national nor resident.  *Id.*, ¶ 26, 29.  Russian law does not provide any mechanism for the Russian Tribunal to compel Tomchin to provide testimony or produce documents.  *Id.*, ¶ 27; *see In re Servicio Pan American de Proteccion, C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y 2004) (production of the necessary materials was likely not obtainable under Venezuelan law); *In re Application of Carsten Rehder Schiffsmakler Und Reederel Gmbh & Co.*, 2008 WL 4642378, at*2 (M.D. Fla. Oct. 17, 2008) (allowing discovery to proceed against a party in a Chinese proceeding because "China's rules of procedure relating to discovery are not comparable to our own and . . . obtaining the information without this Court's assistance is by no means assured.").  Further, because Tomchin is a resident of the United States and found in this District, obtaining documents and deposition testimony from Tomchin would be more efficient here than in Russia.  October Pokazanova Decl., ¶ 28; *see In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004) (finding that discovery could be sought against a party in the foreign proceedings in part because "[i]t is more

efficient for a court located in the Eastern District of Wisconsin to order discovery from persons located in such district than to force [the petitioner] to seek the same discovery in as many as five foreign actions and return to this court if its efforts fail.").

### C.   Desside Seeks Highly Relevant Information That Will Assist The Foreign Tribunal.

As the Supreme Court has stated, the second discretionary factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance."  *Intel*, 542 U.S. at 264.  The burden of demonstrating that the foreign tribunal would be unreceptive to the evidence rests with the party opposing the application.  *In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).  Indeed, courts have been reluctant to deny § 1782 assistance absent "authoritative proof" that the foreign tribunal would reject the evidence sought.  *In re Euromepa S.A.*, 51 F.3d 1095 (2d Cir. 1995).  There, the Second Circuit rejected the analytical approach the district court adopted to determine the French tribunal's "attitude" to the discovery obtained in the U.S. via § 1782.  In the Second Circuit's view, such an approach resulted in an unnecessary and extensive analysis of French law (based on equivocal declarations from "experts" on French law) as to whether such discovery would offend the French court.  *In re Euromepa*, 51 F.3d at 1100.  *See also In re Bayer*, 146 F.3d at 196 ("Inasmuch as relevant evidence is presumptively discoverable under § 1782, the burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application, should rest with the party opposing the application. . . .").

Although the Russian Tribunal has discretion to accept evidence that is submitted to it, there is no reason to suspect that it would not be receptive to the evidence sought here.  October Pokazanova Decl., ¶¶ 19-23.  In fact, Russia has submitted requests to the United States via federal courts for evidence related to

criminal investigations pursuant to a bilateral treaty and § 1782. *See, e.g.*, *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557 (9th Cir. 2011). Given past cooperation between the United States and Russia regarding legal matters, it is likely the Russian Tribunal would accept discovery obtained through United States federal courts. Moreover, because the nature and character of the foreign proceedings relate to the business relationships and contractual agreements among Megawine, Mozel, and Desside (and due to Mozel's denial of payments to Megawine by Desside on Mozel's behalf), discovery regarding such relationships and payments would be critical.

Further, the Russian Tribunal has already expressed an interest in the evidence sought by Desside's petition. At a hearing on November 18, 2013, the Russian Tribunal agreed to make Desside's petition before this Court part of the record before it, and also inquired as to the expected timeframe for when the evidence sought could be obtained in the United States. November Pokazanova Decl., pp. 2-3, ¶ 2-4. On December 16, 2013, Desside is expected by the Russian Tribunal to provide more information regarding the expected timeline for obtaining the evidence at issue here. *Id.* at pp. 6-7, ¶ 4. These inquiries are indicative of the Russian Tribunal's interest in receiving the evidence, subject to how long it would take to obtain the evidence. The Russian Tribunal was given an opportunity to reject the possibility of Desside submitting evidence collected in the United States, and rather than doing so, it asked how long it would take to collect such evidence. As such, Desside is prepared to move quickly upon issuance of an Order from this Court so as not to unduly delay the Russian Legal Proceedings.

Megawine, Tomchin, Lukina, Grandpoint Bank, and City National Bank are likely to have in their custody, possession, and control evidence that bears directly on the issues in dispute in the Russian Legal Proceedings. In particular, Megawine is likely to have books and records including bank statements, records of wire transfers, shipping orders and the like that will bear directly on the truthfulness of

Mozel's denials (a) that it maintains a present relationship with Mozel, (b) that Desside made payments to Megawine at Mozel's request and for Mozel's benefit, and (c) of the authenticity of documents relevant to the Russian Legal Proceedings. October Pokazanova Decl., ¶ 15.

Tomchin's documents and testimony as the CEO and owner of Megawine are directly relevant for the reasons stated in the preceding paragraph. Further, his documents and testimony as CEO and owner of Mozel are also directly relevant to all of Mozel's denials. Among other things, Tomchin is signatory for Mozel to (a) all of the contracts that Mozel now asserts were never "concluded" and (b) each of the draw requests that Mozel now asserts are inauthentic and/or were never acted upon by Desside.

Similarly, Tomchin's testimony as Guarantor is directly relevant to Mozel's denial of the validity of the debt claimed by Desside with respect to the Euro credit line. *Id.*, ¶ 16. Among other things, the Guaranty, which Tomchin executed and had notarized in Los Angeles County, recites that the €9.2 Million "obligations . . . assumed by him in this Guarantee are legal, valid, binding and enforceable obligations." Petition Exhibit M, p. 6.

For the same reasons, Lukina's testimony as Spouse of the Guarantor is directly relevant to the issues in the Russian Legal Proceedings. Further, as Megawine's head of the Export Department and as minority shareholder of Somelye LLC, the sole shareholder of Mozel, she is likely to have evidence bearing on (a) Mozel's current denials of its relationship with Megawine and (b) Mozel's denial that it received the wire transfers reflected in the draw requests. October Pokazanova Decl., ¶ 17.

Finally, the records of Grandpoint Bank and City National Bank with respect to accounts owned by Megawine have a substantial tendency in reason to prove or disprove Mozel's present denials that it used funds provided by Desside to pay for goods shipped by Megawine. Presumably, these banks will have records showing

---

receipt of the payments requested by the draws and Grandpoint Bank's and City National Bank's crediting of those payments to Megawine's accounts. *Id.*, ¶ 18.

The limited discovery requested by Desside is for documents and information that are critical to countering the denials and objections made by Mozel in the Russian Legal Proceedings. *See London v. Does*, 279 F. App'x 513, 515 (9th Cir. 2008) (affirming order granting § 1782 discovery when proof sought was "critical" in light of the "nature and character of the foreign case"); *In re Bayer*, 146 F.3d at 195-96 (documents relevant to the foreign proceedings are "presumptively discoverable" under § 1782). Accordingly, this factor also favors granting of Desside's application.

### D.     No Foreign Discovery Restrictions Bar Desside's Requested Discovery.

The third discretionary factor for the Court to consider is whether Desside is seeking to circumvent foreign proof-gathering restrictions by its application. Section 1782 does not require that the information sought be discoverable under the procedures of the foreign tribunal. *Intel*, 542 U.S. at 261. Rather, this factor requires the Court to evaluate whether the party intends to use § 1782 to avoid explicit foreign restrictions. As demonstrated in the October Pokazanova Declaration, Desside is not attempting to end-run Russian proof-gathering restrictions or policies. Desside's request for discovery assistance is a good faith effort to obtain probative evidence regarding the business and contractual relationship between Megawine and Mozel, the nature of payments from Desside to Megawine, and the authenticity of documents, key questions of fact in the proceedings before the Russian Tribunal. Desside is not aware of any restrictions on proof-gathering procedures that would prohibit obtaining the discovery it seeks through § 1782. October Pokazanova Decl., ¶ 20, 22.

Additionally, as discussed above, the Russian Tribunal has inquired regarding the relief sought here. When Desside submitted the petition it filed with

this Court to the Russian Tribunal, the presiding judge not only made the petition part of the record, but inquired as to the timeline for which the evidence could be gathered. November Pokazanova Decl., pp. 2-3, ¶ 2, pp. 6-7 ¶ 4. The Russian Tribunal has thus tacitly suggested that allowing the discovery sought here would in no way circumvent Russian proof-gathering restrictions, and, as noted above, Desside is unaware of any such restrictions under Russian law. Further, Mozel was represented by counsel at the November 18 hearing in which the existence of this proceeding was made known in open court. November Pokazanova Decl., p. 3. Still, the Russian judge entered the order it did, requesting further information on the timing of when the evidence sought here could be obtained.

"[O]nly upon 'authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782.' should a district court refrain from granting the assistance offered by the act." *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996); *see also In re Euromepa*, 51 F.3d at 1097, 1101 (permitting discovery under § 1782 and observing that the foreign court "can simply refuse to consider any evidence that [the party requesting discovery] gathers by what might be-[under the foreign court's] procedures-an unacceptable practice"); *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004) (holding that "to decline a § 1782(a) request based on foreign nondiscoverability, a district court must conclude that the request would undermine a specific policy of a foreign country or the United States"); *In re Application of Imanagement Services, Ltd.*, 2005 WL 1959702, at *2 (E.D.N.Y. Aug. 16, 2005) (rejecting claims that a Russian court would likely reject submitted evidence, arguing that using an "admissibility" analysis would create additional barriers to the "plain language" of § 1782). Desside's request in no way constitutes a vehicle to end-run Russian discovery rules, nor does it violate Russian law, public policy, or proof-gathering restrictions. October Pokazanova Decl., ¶ 20, 22. Rather, the Russian Tribunal appears affirmatively to be interested in receiving the evidence sought here.

Accordingly, this factor militates in favor of the Court granting the requested discovery.

**E.      Desside's Discovery Requests Are Not Unduly Intrusive Or Burdensome.**

The fourth and final discretionary factor requires the Court to consider whether the discovery sought is intrusive or imposes an undue burden on the parties from whom testimony is sought. *Intel*, 542 U.S. at 265. The evidence sought from Respondents is limited to Megawine's business dealings with Mozel and Desside, in order to address or refute Mozel's denials that it received any funds from Desside and that it directed draws from its Credit Lines to be paid to Megawine or its other "suppliers." As such, Desside only seeks documents and information concerning: (a) the nature of the relationship between Mozel and Megawine; (b) payments made among Megawine, Mozel, and Desside; (c) the ownership and management structure of Megawine; and (d) the bank accounts maintained by Megawine at Grandpoint Bank and National City Bank. *See* Petition Exhibits A-E. *See In re Ex Parte Application of Ontario Principals' Council, et al.*, 2013 WL 6073517, *3 (N.D. Cal. Nov. 8, 2013) (holding no undue intrusion or burden where applicants narrowly tailored their requests to information that will be of obvious need to the foreign tribunal); *In re Application of Futurecorp Int'l Pty Ltd.*, 2012 WL 5818288, *3 (N.D. Cal. Nov. 15, 2012) ("[Petitioner's] proposed deposition subpoena seeks limited testimony regarding specific events and documents and is not unduly intrusive or burdensome"). The universe of documents sought is reasonably focused and easily searchable, and the testimony will be limited to specific topics discussed herein, avoiding any undue burden on Respondents. Finally, the discovery requested from Grandpoint Bank and City National Bank is not unduly burdensome, as it merely seeks account information related to Megawine, the type of discovery requests banks deal with on a regular basis. *See In re Application of Roebers*, 2012 WL 2862122, *3 (N.D.

Cal. Jul 11, 2012) (holding that requests from internet service providers for user account information and IP addresses were not burdensome because such providers "are generally familiar with this type of discovery request").  As with the other *Intel* factors, this weighs in Desside's favor.

## <u>CONCLUSION</u>

Desside seeks narrowly-tailored discovery for use in a foreign legal proceeding.  For all the foregoing reasons, Desside respectfully submits that it has satisfied all the statutory requirements of § 1782 and that the discretionary factors strongly militate in favor of this Court allowing the discovery being sought. Accordingly, Desside respectfully requests that this Court grant the application and issue an order authorizing the issuance of subpoenas in substantially the same form as attached as Exhibits A, B, C, D and E. to this application.

Respectfully submitted this 27th day of November, 2013.

**BUCKLEYSANDLER LLP**

/s/ Fredrick S. Levin _____
Fredrick S. Levin (State Bar No. 187603)
Richard E. Gottlieb (State Bar No. 289370)
100 Wilshire Boulevard, Suite 1000
Santa Monica, CA 90401
Telephone: (310) 424-3984
Facsimile: (310) 424-3960
*Attorneys for Petitioner Desside*
*Holdings Limited*